**CV 19 - 803**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

BILL SURI,

                Plaintiff,

vs.

THE UNITED STATES OF AMERICA and
BUREAU OF PRISONS ("BOP"), JOHN DOE
WARDEN #1, JOHN DOE WARDEN #2, DR. P.
CHOPRA, DR. KEVIN PIGOS, DR. ROSCOE
RAMSEY, JOHN DOE CAMP ADMINISTRATOR,
JOHN DOE WARDEN #3, JOHN DOE MEDICAL
DIRECTOR, DR. ADRIAN OGLE, and BOP
MEDICAL AND OTHER STAFF JOHN DOEs 1-10
(names and number of whom are unknown at present),

                Defendants

-----------------------------------------------------------------X

DeARCY HALL, J.

TISCIONE, M.J.

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1.      This is an action in which the Plaintiff, BILL SURI, seeks relief for the Defendants' violation of his rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Federal Torts Claims Act. Plaintiff seeks damages from the Defendants because he was deprived of essential medical care and attention while incarcerated by the Bureau of Prisons ("BOP").

2.      As a result of the aforementioned violations, Plaintiff suffered permanent loss of mobility and damage to his cardiovascular system, and other emotional, mental, psychological, and physical pain and suffering.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1346 because of the following:

 a. This matter in controversy arises under the Constitution of the United States, including the Eighth Amendment to the Constitution;

 b. This matter in controversy arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.;

 c. This is an action to redress the deprivation under color of law of rights, privileges, and immunities secured to Plaintiff by the Constitution of the United States; and

 d. This action seeks compensatory and punitive damages to vindicate Plaintiff's Constitutional and civil rights secured by the Eighth Amendment of the Constitution of the United States.

4. The Eastern District of New York is an appropriate venue under 28 U.S.C. §§ 1402(b), 1391(6) because Plaintiff resides in this judicial district.

## PARTIES

5. Plaintiff is a 74-year old man. He was incarcerated within BOP facilities during the time of the incidents described herein. He was released on April 26, 2016 from BOP custody and currently resides in Queens, New York.

6. Defendant UNITED STATES OF AMERICA is the government entity with jurisdiction and control over the agencies and employees whose wrongful, negligent and deliberately indifferent conduct injured Plaintiff as alleged herein.

7. Defendant BUREAU OF PRISONS ("BOP") is the Government department and

agency that had direct control over its agents, employees and of the Plaintiff.

8. At all relevant times, the Defendant, JOHN DOE WARDEN #1, was the Warden at a BOP facility known as the Metropolitan Detention Center in Brooklyn, New York who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

9. At all relevant times, the Defendant, JOHN DOE WARDEN #2, was the Warden at a BOP facility in Philadelphia, Pennsylvania, who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

10. At all relevant times, the Defendant, DR. P. CHOPRA, was a urologist at a BOP facility in Lewisburg, Pennsylvania who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

11. At all relevant times, the Defendant, DR. KEVIN PIGOS, was a medical director at a BOP facility in Lewisburg, Pennsylvania who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

12. At all relevant times, the Defendant, DR. ROSCOE RAMSEY, was a physician at a BOP facility in Butner, North Carolina who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

13. At all relevant times, the Defendant, JOHN DOE CAMP ADMINISTRATOR at a BOP facility in Lewisburg, Pennsylvania had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

14. At all relevant times, the Defendant, JOHN DOE WARDEN # 3, was the Warden at a BOP facility at Butner, North Carolina who had care of the Plaintiff and an obligation to

insure that Plaintiff was provided with proper medical care.

15. At all relevant times, the Defendant, JOHN DOE MEDICAL DIRECTOR, was the medical director at a BOP facility at Butner, North Carolina who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

16. At all relevant times, the Defendant, DR. ADRIAN OGLE, was a urologist at a BOP facility at Butner, North Carolina who had care of the Plaintiff and an obligation to insure that Plaintiff was provided with proper medical care.

17. At all relevant times, Defendants BOP MEDICAL STAFF JOHN DOEs 1-10 were employees of the BOP and had responsibility for the care and welfare of the Plaintiff. They personally participated in the wrongful, negligent, and deliberately indifferent conduct alleged herein.

18. At all relevant times, the Individual Defendants identified in paragraphs 6 – 16, and BOP MEDICAL AND OTHER STAFF JOHN DOEs 1-10 were acting under color of law and in the scope of their employment with the federal government. The Individual Defendants previously identified and BOP MEDICAL AND OTHER STAFF JOHN DOEs 1-10 are being sued in their individual capacities pursuant to *Bivens v. Six Unknown Federal Narcotics Agents* and its progeny.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

19. To the extent required, Plaintiff has exhausted his administrative remedies to the best of his ability by pursuing the appropriate processes within the BOP with respect to the claims set forth herein.

## STATEMENT OF FACTS

20. Plaintiff is 74 years old who presently lives alone and is dependent on the assistance of a home health attendant. He is also wheelchair bound.

21. On or about March 1, 2012, Plaintiff walked into a BOP facility to commence service of his sentence following a conviction in the United States District Court for the Southern District of New York.

22. On or about April 26, 2016, Plaintiff was released from the custody and control of the BOP as a cripple, wheelchair bound, unable to walk and suffering from several life-threatening and serious diseases and ailments.

23. The deterioration of the Plaintiff's condition from healthy to seriously ill, debilitated and incapacitated was the direct result of the incompetence, negligence, wrongful and deliberately indifferent conduct on the part of the United States, the BOP and their agents and employees.

24. During his time in BOP custody, Plaintiff was incarcerated in several BOP facilities, including the Metropolitan Center in Brooklyn, a facility in Philadelphia, Pennsylvania, FCI Lewisburg (Camp) in Pennsylvania and FCI Butner in North Carolina. At each of these BOP facilities, Plaintiff's medical needs either were ignored or addressed negligently, incompetently, wrongfully or with deliberate indifference in violation of Plaintiff's rights.

25. By way of background, Plaintiff was arrested on December 21, 2009 and released on bail. He was charged with conspiracy to commit bank fraud and bank fraud. On May 28, 2010, following a twelve-day trial, Plaintiff was convicted of the charged offenses. He was sentenced on April 12, 2011 by the Honorable Sidney H. Stein to 60 months' imprisonment,

5

followed by fours years of supervised release. Plaintiff voluntarily surrendered to the custody of the BOP on or about March 1, 2012. He was taken to the Metropolitan Center in Brooklyn ("MDC").

26. Prior to his imprisonment, Plaintiff was able to walk and while he was receiving medical care, he was not suffering from any serious medical conditions.

27. On or about March 13, 2012, Plaintiff was transferred from MDC to a BOP facility in Philadelphia. On or about March 15, 2012, he was admitted on an emergency basis to a local hospital with a severe cellulitis infection. He was subsequently transferred to Lewisburg Camp ("Lewisburg").

28. Following his imprisonment on or about March 1, 2012, Plaintiff requested Flomax, a prostate medication that he had been prescribed for several years to maintain a healthy prostate, from BOP medical staff. In addition, Plaintiff requested treatment – physical therapy and acupuncture – for spinal stenosis, which he had been receiving prior to his incarceration to maintain and strengthen his mobility. These requests were ignored.

29. The BOP refused to provide Plaintiff with Flomax.

30. On or about June 7, 2012, the BOP diagnosed Plaintiff with prostate cancer.

31. Plaintiff was advised to engage in prostate brachytherapy, a radiation therapy used to treat prostate cancer. BOP refused to provide such treatment. Plaintiff did not receive any treatment for prostate condition while in BOP custody.

32. Following his imprisonment and throughout 2013 and 2014, Plaintiff wrote letters to Judge Stein, attaching his complaints and correspondence with the BOP, and detailing his medical needs and lack of adequate treatment he was receiving from the BOP. On July 5, 2012,

Plaintiff wrote a letter to Judge Stein informing the Court of his prostate cancer diagnosis and BOP's refusal to provide him with Flomax. He also sent the letter to Assistant United States Attorney Lee Renzin.

33. Rather than provide prostate treatment from a local hospital in Lewisburg, Pennsylvania, on or about September 26, 2012, Plaintiff was transferred to Butner Medical Center ("Butner"). Despite repeated and multiple requests by Plaintiff, he was not provided adequate medical care and treatment for his medical conditions.

34. While at Butner and Lewisburg, Plaintiff contacted his medical doctors who had been treating him prior to his imprisonment. In the fall, 2012, such doctors reviewed BOP medical records related to Plaintiff's conditions and advised certain treatments to the BOP. These treatments were ignored and refused by the BOP.

35. Plaintiff's mobility decreased significantly over time following his imprisonment. Beginning in approximately late 2013, Plaintiff began using a walker. After inspection of his L3 and L4 vertebrae, it was discovered that Plaintiff had major stenosis of the spine and surgery was required. The BOP refused to provide treatment related to his spinal stenosis.

36. By the middle of 2014, Plaintiff was wheelchair bound.

37. At Butner, Plaintiff was given a nuclear stress test. The test was positive for arterial blockages. Plaintiff informed the Warden and Unit Manager.

38. Following the positive test, Plaintiff experienced symptoms relating to the blockages, including shortness of breath. He requested medical treatment. BOP refused to provide treatment for the blockages, including Plavix, a medication that Plaintiff was taking prior to his imprisonment. Without treatment, Plaintiff was at increased risk of a heart attack.

7

39. On April 24, 2013, Plaintiff again wrote a letter to Judge Stein, stating that he had submitted multiple requests to the BOP related to his need for medical treatment and the BOP's refusal to provide any.

40. On July 9, 2014, Plaintiff again wrote a letter to Judge Stein, with attachments of his complaints to BOP staff, stating that the BOP had not provided any treatment related to his prostate, cardiovascular and spine conditions.

41. In May, 2015, Plaintiff suffered a heart attack and an infection to his aortic valves. This resulted in bypass surgery on June 19, 2015. Plaintiff had never suffered a heart attack before.

42. Upon his release on April 26, 2016, Plaintiff received prostate cancer treatment from Memorial Sloan Kettering Cancer Center in New York City. In addition, he is presently receiving treatment for his cardiovascular and spine conditions.

43. The BOP's failure and delay in treatment exacerbated Plaintiff's prostate, cardiovascular and spinal conditions. As a result, Plaintiff now requires ongoing and extensive medical care and treatment. His pain and suffering are ongoing.

### Plaintiff's Injuries and Damages

44. As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff:

    (1) Suffered severe physical injuries and pain and suffering;

    (2) Suffered psychological injuries;

    (3) Was denied his state and federal constitutional rights and liberties;

(4) Continues to suffer from physical and psychological injuries, emotional and mental anguish and pain; and

(5) Incurred other items of attendant damages.

## FIRST CAUSE OF ACTION

### *BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS*, 403 U.S. 388 (1971) VIOLATION OF EIGHTH AMENDMENT RIGHTS AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED AGAINST THE INDIVIDUAL DEFENDANTS

45. Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 44 as fully set forth herein.

46. At all times relevant to this action, the Individual Defendants owed a constitutional duty of care to Plaintiff, in accordance with the Eighth Amendment of the United States Constitution.

47. As alleged above, the Individual Defendants, through its employees and agents, breached this duty of care by deliberately failing to provide or arrange for appropriate medical treatment for Plaintiff.

48. As alleged above, the Individual Defendants were deliberately indifferent to Plaintiff's serious medical conditions. The Individual Defendants knew that he was suffering from multiple serious conditions that caused him chronic and substantial pain and discomfort and required further evaluation, diagnosis, and treatment. The Individual Defendants consciously and intentionally disregarded or ignored Plaintiff's condition.

49. The Individual Defendants' wrongful conduct caused Plaintiff severe and

9

permanent injuries, including pain and suffering, mental and emotional pain and suffering, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION

## FEDERAL TORT CLAIMS ACT
## AGAINST DEFENDANT UNITED STATES OF AMERICA

50. Plaintiff hereby incorporates the allegations set forth in Paragraphs 1 through 49 as fully set forth herein.

51. Defendant United States of America, by and through the deliberate indifference of BOP medical and other staff, is liable under the Federal Tort Claims Act for injuries resulting from the Individual Defendants and the BOP's failure to provide adequate medical treatment to Plaintiff.

52. As medical officials, the Individual Defendants and the BOP owed Plaintiff a duty to provide adequate medical care to Plaintiff.

53. As alleged above, the United States, through its employees and agents and the BOP, breached this duty of care by failing to provide or arrange for adequate medical care to Plaintiff.

54. The United States' wrongful conduct caused Plaintiff severe and permanent injuries, physical pain and suffering, mental and emotional pain and suffering and loss of enjoyment and quality of life.

## JURY DEMAND

55. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. For compensatory damages in an amount to be determined;

b. For punitive damages in an amount to be determined;

c. For reasonable attorneys' fees, together with costs and disbursements and this Court's discretion;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.


DATED:     February 8, 2019
New York, New York


Yours, etc.

*[signature]*

JOHN F. KALEY (JK: 3598)
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730
Fax: (212) 962-5037

ANTHONY CECUTTI (AC 5830)
217 Broadway, Suite 707
New York, New York 10007
Ph: (212) 619-3730
Fax: (212) 962-5037

12